1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| SHAMAH MOODY, | ) Case No. CV 08-1607 JC |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| Defendant. | ) |

18
19

**I.    SUMMARY**

20
21
22
23

On November 19, 2008, plaintiff Shamah Moody ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have filed a consent to proceed
before a United States Magistrate Judge.

24
25
26
27
28

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; November 25, 2008 Case Management Order ¶ 5.
///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    On October 15, 2003, plaintiff filed applications for Supplemental Security

7    Income benefits and Disability Insurance Benefits.  (Administrative Record

8    ("AR") 13, 60-62).  Plaintiff asserted that he[2] became disabled on July 1, 2002,

9    due to severe manic depression, psychosis, memory loss, and anxiety attacks.  (AR

10    84).  An ALJ examined the record and heard testimony from plaintiff (who was

11    represented by counsel), medical expert Dr. Joseph Malancharuvil (who testified

12    telephonically), and a vocational expert on February 16, 2006 ("Pre-Remand

13    Hearing").  (AR 13, 323-60).

14    On April 27, 2006, the ALJ determined that plaintiff was not disabled

15    through the date of the decision ("Pre-Remand Decision").  (AR 13-19).  The

16    Appeals Council denied plaintiff's application for review of the ALJ's Pre-

17    Remand Decision.  (AR 5-9).

18    On September 12, 2007, this Court entered judgment reversing and

19    remanding the case for further proceedings because the articulated basis upon

20    which the ALJ discounted the opinion of plaintiff's treating physician was not

21    supported by substantial evidence.  (AR 373, 375-76).  The Appeals Council in

22

23    _____

24    [1]The harmless error rule applies to the review of administrative decisions regarding
disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
25    (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
26    application of harmless error standard in social security cases).

27    [2]Although Plaintiff's Motion indicates that plaintiff is female (Plaintiff's Motion at 2), the
28    record reflects that plaintiff's middle name is David and that he is male.  (See, e.g., AR 60
(Social Security Application referencing plaintiff's middle name]; AR 113-21 [Plaintiff's
mother's function report in which plaintiff's mother refers to plaintiff as "he" and "him"]).

1  turn remanded the case for a new hearing.  (AR 387-88).  On remand the ALJ

2  heard testimony from plaintiff (who again appeared with counsel), medical expert

3  Dr. William Soltz, and a vocational expert on April 7, 2008 ("Post-Remand

4  Hearing").  (AR 364, 568-98).

5       On July 22, 2008, the ALJ again determined that plaintiff was not disabled

6  through the date of the decision ("Post-Remand Decision").[3]  (AR 13-19, 364-

7  370).  The ALJ found, *inter alia*, that plaintiff was not disabled at any time

8  through the date of the decision.  (AR 365, 370).  Specifically, the ALJ found:

9  (1) plaintiff suffered from the following severe impairments:  major depressive

10  disorder and polysubstance abuse (AR 366); (2) plaintiff's impairments or

11  combination of impairments, did not meet or medically equal one of the listed

12  impairments (AR 366-67); (3) plaintiff could perform a full range of work at all

13  exertional levels, but was limited to only moderately complex tasks up to 4 to 5

14  steps, should not work around dangerous machinery or in jobs that involve high

15  stress or the safety of others, and should avoid intense interaction with co-workers,

16  supervisors and the public (AR 367, 368); (4) plaintiff had no past relevant work

17  (AR 369); (5) there are jobs that exist in significant numbers in the national

18  economy that plaintiff could perform (AR 369-70); and (6) plaintiff's allegations

19  regarding his limitations were not credible (AR 368).

20  **III.   APPLICABLE LEGAL STANDARDS**

21       **A.     Sequential Evaluation Process**

22       To qualify for disability benefits, a claimant must show that he is unable to

23  engage in any substantial gainful activity by reason of a medically determinable

24  physical or mental impairment which can be expected to result in death or which

25  has lasted or can be expected to last for a continuous period of at least twelve

26  months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

27

28
        [3]The ALJ stated that his April 27, 2006 decision was incorporated by reference into, and
thus supplemented by, his July 22, 2008 decision.  (AR 364).

1 § 423(d)(1)(A)).  The impairment must render the claimant incapable of

2 performing the work he previously performed and incapable of performing any

3 other substantial gainful employment that exists in the national economy.  <u>Tackett</u>

4 <u>v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

5 In assessing whether a claimant is disabled, an ALJ is to follow a five-step

6 sequential evaluation process:

7     (1)    Is the claimant presently engaged in substantial gainful activity?  If

8         so, the claimant is not disabled.  If not, proceed to step two.

9     (2)    Is the claimant's alleged impairment sufficiently severe to limit

10         his ability to work?  If not, the claimant is not disabled.  If so,

11         proceed to step three.

12     (3)    Does the claimant's impairment, or combination of

13         impairments, meet or equal an impairment listed in 20 C.F.R.

14         Part 404, Subpart P, Appendix 1?  If so, the claimant is

15         disabled.  If not, proceed to step four.

16     (4)    Does the claimant possess the residual functional capacity to

17         perform his past relevant work?  If so, the claimant is not

18         disabled.  If not, proceed to step five.

19     (5)    Does the claimant's residual functional capacity, when

20         considered with the claimant's age, education, and work

21         experience, allow him to adjust to other work that exists in

22         significant numbers in the national economy?  If so, the

23         claimant is not disabled.  If not, the claimant is disabled.

24 <u>Stout v. Commissioner, Social Security Administration</u>, 454 F.3d 1050, 1052 (9th

25 Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

26 The claimant has the burden of proof at steps one through four, and the

27 Commissioner has the burden of proof at step five.  <u>Bustamante</u>, 262 F.3d at 953-

28 ///

4

1   54 (citing <u>Tackett</u>); <u>see</u> <u>also</u> <u>Burch</u>, 400 F.3d at 679 (claimant carries initial burden
2   of proving disability).

3        In addition, a claimant who otherwise meets the definition of disability
4   under the Social Security Act is not eligible to receive disability benefits if drug
5   addiction or alcoholism is a "contributing factor material to the determination of
6   disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). Such claimant has the burden
7   to demonstrate that he would be disabled even if his substance abuse stopped.
8   <u>Parra v. Astrue</u>, 481 F.3d 742, 748 (9th Cir. 2007), <u>cert. denied</u>, 128 S. Ct. 1068
9   (2008).

10        **B.     Standard of Review**

11        Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
12   benefits only if it is not supported by substantial evidence or if it is based on legal
13   error. <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 882 (9th Cir.
14   2006) (citing <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1457
15   (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable
16   mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>,
17   402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a
18   mere scintilla but less than a preponderance. <u>Robbins</u>, 466 F.3d at 882 (citing
19   <u>Young v. Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990)).

20        To determine whether substantial evidence supports a finding, a court must
21   "'consider the record as a whole, weighing both evidence that supports and
22   evidence that detracts from the [Commissioner's] conclusion.'" <u>Aukland v.</u>
23   <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d
24   953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming
25   or reversing the ALJ's conclusion, a court may not substitute its judgment for that
26   of the ALJ. <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

27   ///

28   ///

**IV.    DISCUSSION**

    **A.    The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician**

        **1.    Pertinent Facts**

            **a.    Opinions of Plaintiff's Treating Physician**

On February 15, 2006, plaintiff's treating physician at the Swift-Phoenix Clinic, Dr. Gurmit Sekhon, completed a Mental Work Capacity Evaluation. (AR 321-22).  The Mental Work Capacity Evaluation stated in its instructions on the first page:  "*Please make your assessment apart from the effects of drug or alcohol use or abuse.*"  (AR 321) (emphasis in original).  The Mental Work Capacity Evaluation reflects that Dr. Sekhon:  (i) diagnosed plaintiff with bipolar disorder and schizoaffective disorder (AR 322); (ii) checked the boxes indicating that plaintiff had severe limitations in his ability to:  (a) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (b) sustain an ordinary routine without supervision; (c) work in coordination with or in proximity to others without being distracted by them; (d) make simple work-related decisions; (e) interact appropriately with the general public; (f) ask simple questions or request assistance; (g) accept instructions and respond appropriately to criticism from supervisors; (h) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (i) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (j) respond appropriately to changes in the work setting; (k) be aware of normal hazards and take appropriate precautions; and (l) set realistic goals or make plans independently of others (AR 321-22); (iii) checked the box indicating that plaintiff had marked limitations in his ability to:  (a) remember locations and work-like procedures; (b) understand and remember very short and simple instructions; and (c) maintain attention and concentration for extended periods (AR 321); (iv) checked the box indicating that plaintiff had moderate limitations

6

1   in his ability to carry out very simple and short instructions (AR 321); (v) checked

2   the box indicating that plaintiff was not a malingerer (AR 322); (vi) checked the

3   box indicating that plaintiff's impairment lasted or could be expected to last at

4   least twelve months (AR 322); and (vii) checked the box indicating that plaintiff

5   would be expected to miss work at least three times a month.  (AR 322).

6         The record contains outpatient notes from the Swift-Phoenix Clinic

7   concerning plaintiff's ongoing psychiatric treatment by Dr. Sekhon and other

8   treating medical personnel.  (AR 270-79, 281-91, 293-99, 301-19, 412-13, 443-53,

9   455-56, 464-68, 470-72, 479-84, 487-501).[4]  The notes span the time period of

10  February 18, 2004 to January 25, 2008, and reflect that plaintiff met with a

11  physician approximately once a month.  (AR 270-79, 281-91, 293-99, 301-19,

12  412-13, 443-53, 455-56, 464-68, 470-72, 479-84, 487-501).

13                  **b.    Other Pertinent Medical Opinion Evidence**

14        On February 5, 2004, Dr. K. Gregg, a non-examining consultative

15  physician, completed a Psychiatric Review Technique form.  (AR 198-214).  Dr.

16  Gregg concluded, in pertinent part, that plaintiff's medical records revealed no

17  evidence of cognitive defects, but that plaintiff was limited in his ability to interact

18  with the public.  (AR 214).

19        On October 6, 2006, Dr. Linda Smith, an examining consultative

20  psychiatrist, conducted a complete psychiatric evaluation of plaintiff.  (AR 414-

21  22).  Dr. Smith found, in pertinent part, that there was "no evidence at all" of

22  plaintiff's claimed mental impairments, that plaintiff was not credible, and that

23  plaintiff was not limited in his ability to work.  (AR 421).  Dr. Smith stated that

24  plaintiff's previous psychological problems were likely due to plaintiff's drug use,

25  which plaintiff claimed he had discontinued.  (AR 421).

26

27
_____

28         [4]The Administrative Record contains duplicate copies of medical reports from the Swift-
Phoenix Clinic.  (AR 270-74, 276, 278-79, 296-99, 307-19, 464, 470, 472, 481, 487-90, 493-
501).

1    On October 18, 2006, Dr. H. Amado, a non-examining consultative

2    physician, completed a Psychiatric Review Technique form (AR 424-35), and a

3    related Mental Residual Functional Capacity Assessment (AR 436-38).  Dr.

4    Amado concluded, in pertinent part, that plaintiff had a medically determinable

5    impairment of polysubstance abuse, but stated that he was unable to tell whether it

6    was in remission given that plaintiff's records showed plaintiff had a history of

7    drug use, yet plaintiff denied drug use when Dr. Smith examined him.  (AR 430).

8    Dr. Amado's Mental Residual Functional Capacity Assessment showed plaintiff

9    had moderate limitations in his ability to understand, remember, and carry out

10   detailed instructions, but otherwise had no other significant mental limitations.

11   (AR 436-38).

12                      **c.   Plaintiff's Pertinent Testimony**

13   At the Pre-Remand Hearing, plaintiff testified to the following:  He rarely

14   drank alcohol.  He did not use marijuana often.  He had last used

15   methamphetamine in 2003.  His doctor had not told plaintiff it was acceptable to

16   drink while taking his prescribed medication.  Plaintiff saw Dr. Sekhon[5] every four

17   to five weeks.  Plaintiff told Dr. Sekhon that he drank once in a while and smoked

18   marijuana, but the doctor "didn't suggest it."  (AR 331-32, 336, 338).

19   At the Post-Remand hearing, plaintiff testified to the following:  He then

20   drank alcohol three to four times a week to the point of becoming drunk, and then

21   used methamphetamine two or three times a week.  (AR 579).  Since July 2002, he

22   had not remained off all drugs or alcohol for more than a six month continuous

23   period of time.  (AR 592).

24                      **d.   Medical Expert Testimony**

25   At the Post-Remand Hearing, the ALJ called William Soltz, Ph.D. to testify

26   as a medical expert with respect to plaintiff's mental impairments.  (AR 364, 368,

27   _____

28        [5]The transcript of the Pre-Remand Hearing incorrectly reflects that plaintiff's treating
     physician's name is spelled "Dr. Chicon."  (AR 333).

                                         8

573-89).  Dr. Soltz thoroughly reviewed plaintiff's psychological records and questioned plaintiff about his drug and alcohol use.  (AR 573-77).  In light of plaintiff's testimony and the medical evidence in the record, Dr. Soltz opined:  Plaintiff had medically determinable psychological impairments of depressive disorder and polysubstance abuse.  (AR 577, 579).  Due to the combined effects of plaintiff's two impairments, plaintiff (i) should not work around heights, dangerous equipment, automobiles or similar hazards, or in jobs where the security of others is involved (AR 581, 584-85); (ii) should not work in high stress positions (*e.g.* armed security, bill collector) (AR 581, 585); (iii) could perform only moderately complex tasks up to four to five steps (AR 585); and (iv) should avoid intense interaction with co-workers, supervisors and the public (AR 585).

Dr. Soltz further opined:  It was very difficult accurately to discern whether plaintiff's functional limitations were due primarily to one or both of plaintiff's medically determinable impairments.  (AR 577-79).  Optimally a person should be allowed to detoxify from alcohol and drugs for at least nine months before an accurate diagnosis of any underlying psychological condition could be made apart from symptoms related to substance abuse.  (AR 578, 581).  Here, although there were "intermittent periods" during which plaintiff had stopped using drugs and alcohol, no such period had lasted longer than seven months.  (AR 580-81).  The record did, however, reflect that when plaintiff reduced his drug and alcohol use, plaintiff's symptoms improved.  (AR 580).  Thus, based on the existing records, plaintiff's substance abuse likely was the primary cause of plaintiff's depressive disorder and any hallucinations and paranoia plaintiff may have experienced, and plaintiff's participation in a substance abuse program could eliminate 50 to 75 percent of his functional limitations "pathology."[6]  (AR 577-78, 582, 587).

---

[6]Dr. Soltz also testified:   When a person has not sufficiently detoxified, the most common cause of depression is drug and/or alcohol use.  (AR 578).  Heavy abuse of alcohol and drugs mimic a major depressive type disorder.  Methamphetamine use could cause both hallucinations and delusions.  (AR 577, 582).

1   Dr. Soltz further testified:  The severe functional limitations stated in Dr.

2   Sekhon's opinions were unsupported by any other medical evidence in the record.

3   (AR 580-83).  However, Dr. Soltz was unable to tell whether Dr. Sekhon's own

4   examinations of plaintiff supported such substantial limitations, since Dr.

5   Sekhon's treatment notes were mostly unintelligible.  (AR 581-82, 588-89).

6   While Dr. Sekhon's opinions could be correct, Dr. Soltz did not believe they were.

7   (AR 581, 588).

8                    **e.    ALJ's Residual Functional Capacity Assessment**

9             In the Post-Remand Decision, the ALJ summarized the medical evaluations,

10  the treatment records and the testimony of plaintiff and medical expert Dr. Soltz,

11  and gave "careful consideration [to] the entire record."  (AR 367-69).  As noted

12  above, the ALJ determined that, even when accounting for the effects of plaintiff's

13  drug and alcohol use, plaintiff had the residual functional capacity to perform a

14  full range of work at all exertional levels, but was limited to only moderately

15  complex tasks up to 4 to 5 steps, should not work around dangerous machinery, or

16  in jobs that involve high stress or the safety of others, and should avoid intense

17  interaction with co-workers, supervisors and the public.  (AR 367).  The ALJ

18  based his residual functional capacity assessment on, *inter alia*, Dr. Soltz's

19  testimony regarding plaintiff's functional limitations, and plaintiff's own

20  testimony regarding his drug and alcohol use.  (AR 368).

21            The ALJ rejected almost all of the opinions expressed in Dr. Sekhon's

22  Mental Work Capacity Evaluation of plaintiff, giving the following reasons:

23                    Regarding Exhibit 10F [AR 320-22], Dr. Sekhom's evaluation

24            indicates [plaintiff] is extremely limited in almost all activities

25            although he noted [plaintiff] is only moderately limited in his ability

26            to carry out short and simple instructions.  There is virtually no

27            evidence in the record to support this evaluation.  Granted, Dr.

28            Sekhom's records are unreadable, but there is no treatment found for

10

1    drug/alcohol abuse, indicating that [plaintiff] did not admit drug use.

2    At the hearing, [plaintiff] admitted drug use throughout the relevant

3    period.  Social Security disability [] claimants have the burden of

4    proving disability and [plaintiff] bears the burden of proving that drug

5    or alcohol addiction is not a contributing factor material to his

6    disability.

7    (AR 369).

8                    **2.    Pertinent Law**

9         In Social Security cases, courts employ a hierarchy of deference to medical

10   opinions depending on the nature of the services provided.  Courts distinguish

11   among the opinions of three types of physicians:  those who treat the claimant

12   ("treating physicians") and two categories of "nontreating physicians," namely

13   those who examine but do not treat the claimant ("examining physicians") and

14   those who neither examine nor treat the claimant ("nonexamining physicians").

15   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995), as amended (9th Cir. 1996)

16   (footnote reference omitted).  A treating physician's opinion is entitled to more

17   weight than an examining physician's opinion, and an examining physician's

18   opinion is entitled to more weight than a nonexamining physician's opinion.[7]  See

19   id.  In general, the opinion of a treating physician is entitled to greater weight than

20   that of a non-treating physician because the treating physician "is employed to

21   cure and has a greater opportunity to know and observe the patient as an

22   individual."  Morgan v. Commissioner of Social Security Administration, 169

23   F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th

24   Cir. 1987)).

25

26

27        [7]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to
28   draw bright line distinguishing treating physicians from non-treating physicians; relationship is
     better viewed as series of points on a continuum reflecting the duration of the treatment
     relationship and frequency and nature of the contact) (citation omitted).

1    The treating physician's opinion is not, however, necessarily conclusive as
2    to either a physical condition or the ultimate issue of disability. Magallanes v.
3    Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d
4    759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not
5    contradicted by another doctor, it may be rejected only for clear and convincing
6    reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal
7    quotations omitted). The ALJ can reject the opinion of a treating physician in
8    favor of a conflicting opinion of another examining physician if the ALJ makes
9    findings setting forth specific, legitimate reasons for doing so that are based on
10   substantial evidence in the record. Id. (citation and internal quotations omitted);
11   Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by
12   setting out detailed and thorough summary of facts and conflicting clinical
13   evidence, stating his interpretation thereof, and making findings) (citations and
14   quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite
15   "magic words" to reject a treating physician opinion – court may draw specific and
16   legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his
17   conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must
18   set forth his own interpretations and explain why they, rather than the
19   [physician's], are correct." Id. "Broad and vague" reasons for rejecting the
20   treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599,
21   602 (9th Cir. 1989).

22   When they are properly supported, the opinions of physicians other than
23   treating physicians, such as examining physicians and non-examining medical
24   experts, may constitute substantial evidence upon which an ALJ may rely. See,
25   e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative
26   examiner's opinion on its own constituted substantial evidence, because it rested
27   on independent examination of claimant); Morgan, 169 F.3d at 600 (testifying
28   medical expert opinions may serve as substantial evidence when "they are

1   supported by other evidence in the record and are consistent with it"). Where, as

2   here, a conflict exists between the assessment of a non-examining, testifying

3   physician based on objective clinical findings and the assessment of a treating

4   physician, the non-examining physician's opinion may itself constitute substantial

5   evidence warranting rejection of the treating doctor's opinion, and it is the sole

6   province of the ALJ to resolve the conflict.  Morgan, 169 F.3d at 600; Andrews v.

7   Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

8                   **3.    Analysis**

9        Plaintiff contends that the ALJ failed adequately to consider the opinions

10  expressed in Dr. Sekhon's Mental Work Capacity Evaluation.  (Plaintiff's Motion

11  at 3-6).  More specifically, plaintiff alleges that the ALJ inadequately addressed

12  and/or ignored evidence that Dr. Sekhon reached his opinions without including

13  the effects of plaintiff's substance abuse.  (Plaintiff's Motion at 5-6).  This Court

14  concludes that the ALJ did not materially err in evaluating the record medical

15  evidence.

16       First, the ALJ properly discredited Dr. Sekhon's opinions as unsupported by

17  the record as a whole.  Batson v. Commissioner of Social Security Administration,

18  359 F.3d 1190, 1195 (9th Cir. 2004).  Dr. Sekhon diagnosed plaintiff with bipolar

19  disorder and schizoaffective disorder and concluded that plaintiff was severely

20  limited in almost all ability to function in a work environment.  (AR 321-22).  As

21  the ALJ correctly noted, however, no medical evidence in the record supports such

22  significant functional limitations.  Dr. Soltz testified that he also found no support

23  in the record for the treating physician's limitations, even when symptoms related

24  to plaintiff's drug and alcohol use were considered.  (AR  577-88).  Other medical

25  opinion evidence in the record is in accord with Dr. Soltz's findings.  (AR 214,

26  421, 436-38).  Dr. Soltz's assessment, supported by and consistent with the bulk of

27  plaintiff's medical evidence, constitutes substantial evidence in support of the

28  ///

                                          13

1  ALJ's decision to reject Dr. Sekhon's conflicting opinions.  <u>Morgan</u>, 169 F.3d at
2  600.

3         Second, even though the Mental Work Capacity Evaluation form completed
4  by Dr. Sekhon instructed him to make an assessment apart from the effects of drug
5  or alcohol use or abuse, this Court concludes based on the current record, and
6  particularly plaintiff's testimony at the Post-Remand Hearing regarding his
7  alcohol and drug use, that the ALJ did not materially err in rejecting Dr. Sekhon's
8  opinions, as the record does not reflect that Dr. Sekhon was ever aware of the
9  extent of plaintiff's drug and alcohol use and abuse and thus in a position to
10 discount such use and abuse in making an assessment as the form instructed.  The
11 record reflects that plaintiff has a significant history of drug and alcohol use.  (AR
12 368, 417-18, 430, 573-76).  Dr. Soltz testified that plaintiff likely had not been
13 candid with medical personnel about the true extent of his drug and alcohol use,
14 since none of plaintiff's medical records – including those from other physicians at
15 the Swift-Phoenix clinic where Dr. Sekhon practiced – reflects that plaintiff had
16 ever been referred for substance abuse treatment.  (AR 586).  Similarly, Dr.
17 Sekhon's failure to diagnose plaintiff with substance abuse suggests that plaintiff
18 had not been candid with his treating physician about the magnitude of his drug
19 and alcohol use.  (AR 587).  In fact, plaintiff's testimony suggests that plaintiff
20 admitted to Dr. Sekhon only nominal drug and alcohol use.  (AR 331-32, 336,
21 338).  Accordingly, this Court now concludes that the ALJ reasonably inferred that
22 Dr. Sekhon was unaware of the extent of plaintiff's drug use, and thus could not
23 have rendered his opinions apart from the effects of plaintiff's drug or alcohol use
24 on plaintiff's ability to work despite the instructions on the form to do so.

25        Accordingly, the ALJ's rejection of Dr. Sekhon's opinions is supported by
26 substantial evidence and is free from material error.

27 ///
28 ///

14

1        **B.      The ALJ Did Not Materially Err in Developing the Record**

2            Plaintiff contends that the ALJ failed properly to develop the record by

3    declining plaintiff's request for an orthopedic consultative examination of his

4    ankle.  (Plaintiff's Motion at 6).  The Court finds harmless any error in the ALJ's

5    decision to decline plaintiff's request.

6                **1.      Pertinent Facts**

7            At the Post-Remand Hearing, plaintiff stated that ten months earlier he had

8    sustained a "minor" break in his right ankle which had subsequently become

9    infected.  (AR 572).  At the end of such hearing, plaintiff's attorney asked the ALJ

10   to order an orthopedic consultative examination, stating that plaintiff's injury and

11   confinement to a wheelchair could be probative of disability.  (AR 596).  The ALJ

12   declined the request, and instead asked the vocational expert to testify to whether

13   plaintiff's confinement to a wheelchair changed the expert's earlier conclusion

14   that jobs existed in significant numbers in the national economy which plaintiff

15   could do.  (AR 596-97).  The vocational expert testified that it did not.  (AR 596-

16   97).

17           In his Post-Remand Decision, the ALJ stated that he had declined plaintiff's

18   request for a consultative examination due to the "lack of objective evidence."

19   (AR 368-69).  The ALJ noted that "there was no evidence in the record of

20   [plaintiff's] break or of the prescription for a wheelchair."  (AR 368).  The ALJ

21   also stated that medical records submitted at the hearing reflected that plaintiff had

22   undergone ankle surgery on June 5, 2007, but that subsequent x-rays showed that

23   plaintiff's condition was stable.  (AR 369) (citing Ex. 19F [AR 541]).  The ALJ

24   rejected plaintiff's suggestion that plaintiff met listings 1.02A or 1.03, stating that

25   the evidence did not support such a finding or a finding that any impairment could

26   be expected to last more than 12 months.  (AR 369).

27   ///

28   ///

15

1          **2.     Pertinent Law**

2          Although plaintiff bears the burden of proving disability, the ALJ has an

3    affirmative duty to assist the claimant in developing the record "when there is

4    ambiguous evidence or when the record is inadequate to allow for proper

5    evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir.

6    2001) (citation omitted); Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir.

7    2001); see also Webb, 433 F.3d at 687 (ALJ has special duty fully and fairly to

8    develop record and to assure that claimant's interests are considered).  Where it is

9    necessary to enable the ALJ to resolve an issue of disability, the duty to develop

10   the record may require consulting a medical expert or ordering a consultative

11   examination.  See 20 C.F.R. §§ 404.1519a, 416.919a; see, e.g., Armstrong v.

12   Commissioner of Social Security Administration, 160 F.3d 587, 590 (9th Cir.

13   1998) (where there were diagnoses of mental disorders prior to the date of

14   disability found by the ALJ, and evidence of those disorders even prior to the

15   diagnoses, the ALJ was required to call a medical expert to assist in determining

16   when the plaintiff's impairments became disabling).

17         The ALJ is not obliged to undertake the independent exploration of every

18   conceivable condition or impairment a claimant might assert.  Therefore, an ALJ

19   does not fail in his duty to develop the record by not seeking evidence or ordering

20   further examination or consultation regarding a physical or mental impairment if

21   no medical evidence indicates that such an impairment exists.  See Breen v.

22   Callahan, 1998 WL 272998, at *3 (N.D. Cal. May 22, 1998) (noting that, in the

23   Ninth Circuit, the ALJ's obligation to develop the record is triggered by "the

24   presence of some objective evidence in the record suggesting the existence of a

25   condition which could have a material impact on the disability decision") (citing

26   Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of

27   Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991)); see also Pearson

28   v. Bowen, 866 F.2d 809, 812 (5th Cir. 1989) (requiring that claimant must "raise a

1  suspicion concerning such an impairment" before ALJ is required to discharge
2  duty of full inquiry by ordering a consultative examination).

3                    **3.    Analysis**

4      The Court rejects plaintiff's contention that the ALJ's decision to decline
5  plaintiff's request for a consultative examination warrants a reversal or remand.

6      First, plaintiff was obligated to provide the ALJ with *some* objective
7  medical evidence of a condition which could have a material impact on the ALJ's
8  disability decision.  Breen, 1998 WL 272998, at *3.  However, as reflected in the
9  Post-Remand Decision, the ALJ reviewed the medical records plaintiff submitted
10 at the hearing and concluded that there was no objective evidence that plaintiff
11 continued to suffer from an ankle break, that he had a prescription for a
12 wheelchair, or that any impairment from the alleged injury would last more than
13 twelve months.  (AR 368-69).  Plaintiff fails to point to any objective evidence in
14 the record to suggest the contrary.  In fact, plaintiff appears to concede as much,
15 stating:  "[T]he purpose for a consultative examination was to provide objective
16 evidence regarding [plaintiff's] ankle break and the prescription for a wheelchair."
17 (Plaintiff's Motion at 7 (emphasis added)).  Absent such objective evidence,
18 however, the ALJ had no duty to order a consultative examination for plaintiff at
19 government expense.  See Diaz v. Secretary of Health and Human Services, 898
20 F.2d 774, 778 (10th Cir. 1990) (ALJ has broad discretion to deny request for
21 consultative examination where claimant fails to present objective evidence
22 supporting claimed impairment); see also Reed v. Massanari, 270 F.3d 838, 842
23 (9th Cir. 2001) ("The government is not required to bear the expense of [a
24 consultative] examination for every claimant) (citing id.; 20 C.F.R.
25 §§ 404.1517-1519t, 416.917-919t); Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir.
26 1991) (decision to order consultative examination rests within ALJ's discretion)
27 (citation omitted).
28 ///

Second, the decision to call a medical expert for additional evidence on the nature and severity of impairments is required only "[w]hen . . . in the opinion of the [ALJ] or the Appeals Council the symptoms, signs and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable." SSR 96-6p. Here, the ALJ reasonably determined that the medical records did not suggest that plaintiff's ankle injury met a Listing, and plaintiff offers no plausible theory of equivalency. See Sullivan v. Zebly, 493 U.S. 521, 530-31 (1990) (For a claimant to show that his impairment matches [or is equivalent to] a listing, it must meet all of the specified medical criteria [of the listed impairment].").

Finally, even assuming, *arguendo*, that the ALJ's decision not to order a consultative examination was erroneous, any such error was harmless. The vocational expert testified that there were still jobs that existed in significant numbers in the national economy that plaintiff could perform even assuming he was confined to a wheelchair. (AR 596-97).

In light of the foregoing, a remand or reversal on this basis is not warranted.

## C.   The ALJ Properly Evaluated Plaintiff's Credibility

### 1.   Additional Pertinent Facts

In written statements submitted in support of his application for benefits, plaintiff stated: He had difficulty sleeping and concentrating, was restless, suffered from anxiety attacks, paranoia, depression, psychosis, and had memory loss. (AR 78, 82, 84, 105-11, 122, 126, 128-29).

At the Pre-Remand Hearing, plaintiff testified that he had experienced auditory hallucinations. (AR 349-51).

In his written decisions, the ALJ noted that plaintiff's symptoms included hallucinations, psychosis, confusion and depression. (AR 14, 368). The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce such symptoms, but determined that plaintiff's statements

18

concerning the intensity, persistence and limiting effects of his subjective complaints were not credible.  (AR 15, 368).  The ALJ provided three reasons for discounting plaintiff's subjective complaints.

First, the ALJ pointed out that plaintiff's subjective complaints were inconsistent with plaintiff's failure to seek treatment for his substance abuse.  Specifically, the ALJ stated:

> Any attempt to dismiss [plaintiff's] history of substance abuse as "self medication for his mental illness" does not negate the fact that [plaintiff] continued to engage in substance abuse.  There is evidence of continued substance abuse up to the present.  It is reasonable to assume that were [plaintiff] suffering from the disabling mental problems alleged, he would stop substance abuse and he would receive ongoing, aggressive substance rehabilitation.

(AR 15).

Second, the ALJ noted several occasions when plaintiff gave conflicting statements regarding his drug and alcohol use.  (AR 368).  Specifically, the ALJ stated the following about plaintiff's answers to the medical expert's questions at the Post-Remand Hearing:

> At the hearing, . . . [plaintiff] stated that he last used drugs in 2002 and in 2003 he used methamphetamine.  At the time he started on Seroquel and has not used since.  Then, [plaintiff] testified he last used drugs on January 16, 2004, was using drugs in 2004, and in 2005 there is a blood test lab result that shows drug use.  He stated he still uses drugs when he gets flustered and when his meds are not working which happens 3 or 4 times a week.  The medical expert noted that on October 6, 2006, [plaintiff] reported to [] Dr. Smith at a psychiatric evaluation that he was drinking up to 24 ounces of malt liquor about 3 times a week.  He said he used to drink more but had

1
2
3
4
5

decreased drinking in 2003.  His last drink was the previous night
(see Exhibit 11F p.4) [AR 417].  [Plaintiff] admitted at the hearing
that he did drink 3 times a week but not so much anymore.  He stated
that . . . when his medication was not working he used drugs and
alcohol.

6  (AR 368).

7
8
9
10
11

Finally, the ALJ cited plaintiff's poor work history as evidence of plaintiff's
lack of credibility:  "I note that [plaintiff] has not performed any substantial
gainful activity in the past 15 years.  This lack of work history indicates that
[plaintiff's] pursuit of disability status may be motivated by a desire to finance his
chosen lifestyle, rather than motivated by an actual disability."  (AR 15)

12                                **2.    Pertinent Law**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

An ALJ is not required to believe every allegation of disabling pain or other
non-exertional impairment.  Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007)
(citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  If the record establishes
the existence of a medically determinable impairment that could reasonably give
rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as
to the credibility of the claimant's statements about the symptoms and their
functional effect.  Robbins, 466 F.3d 880 at 883 (citations omitted).  Where the
record includes objective medical evidence that the claimant suffers from an
impairment that could reasonably produce the symptoms of which the claimant
complains, an adverse credibility finding must be based on clear and convincing
reasons.  Carmickle v. Commissioner, Social Security Administration, 533 F.3d
1155, 1160 (9th Cir. 2008) (citations omitted).  The only time this standard does
not apply is when there is affirmative evidence of malingering.  Id.  The ALJ's
credibility findings "must be sufficiently specific to allow a reviewing court to
conclude the ALJ rejected the claimant's testimony on permissible grounds and
///

1  did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367

2  F.3d 882, 885 (9th Cir. 2004).

3      To find the claimant not credible, an ALJ must rely either on reasons

4  unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal

5  contradictions in the testimony, or conflicts between the claimant's testimony and

6  the claimant's conduct (*e.g.*, daily activities, work record, unexplained or

7  inadequately explained failure to seek treatment or to follow prescribed course of

8  treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at

9  680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's

10 testimony solely because it is not substantiated affirmatively by objective medical

11 evidence, the lack of medical evidence is a factor that the ALJ can consider in his

12 credibility assessment. Burch, 400 F.3d at 681.

13     Questions of credibility and resolutions of conflicts in the testimony are

14 functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th

15 Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable

16 and is supported by substantial evidence, it is not the court's role to

17 "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

18             **3.    Analysis**

19     Plaintiff contends that the ALJ improperly evaluated his credibility.

20 (Plaintiff's Motion at 8-10). The Court concludes that the ALJ stated clear and

21 convincing reasons for discounting plaintiff's statements which are supported by

22 substantial evidence. Accordingly, a reversal or remand based upon the ALJ's

23 assessment of plaintiff's credibility is not warranted.

24     First, the ALJ reasonably discredited plaintiff's subjective complaints as

25 inconsistent with the level of treatment he received. The ALJ noted that plaintiff

26 had a significant history of drug and alcohol use, and plaintiff himself testified that

27 he had been unable to remain clean and sober for more than four or five months at

28

1  a time, yet plaintiff sought no treatment for drug or alcohol abuse.[8]  (AR 368).

2  The medical expert testified that (i) plaintiff's subjective symptoms were most

3  accurately attributed to plaintiff's substance abuse (AR 577-78, 582, 587);

4  (ii) evidence in the record reflects that when plaintiff reduced his drug and alcohol

5  use, plaintiff's symptoms improved (AR 580); (iii) plaintiff needed to be in a

6  substance abuse program to address those symptoms (AR 587); and (iv) plaintiff

7  had received no such treatment (AR 586).  It was reasonable for the ALJ to infer

8  that if plaintiff's mental problems were as severe as he expressed, he would have

9  sought and been prescribed substance abuse treatment.  In assessing credibility,

10  the ALJ may properly rely on plaintiff's unexplained failure to request treatment

11  consistent with the alleged severity of his symptoms.  Bunnell v. Sullivan, 947

12  F.2d 341, 346 (9th Cir. 1991) (en banc) (ALJ may discredit plaintiff's subjective

13  complaints based on "unexplained, or inadequately explained, failure to seek

14  treatment or follow a prescribed course of treatment.") (citation omitted); Tidwell

15  v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (lack of treatment and reliance upon

16  nonprescription pain medication "clear and convincing reasons for partially

17  rejecting [claimant's] pain testimony"); cf. Wodtli v. Astrue, 2008 WL 4104216,

18  at *6 (N.D. Cal. Sept. 2, 2008) (ALJ properly discredited plaintiff's testimony in

19  light of plaintiff's failure to follow doctor's instruction to discontinue using

20  alcohol).

21       Second, the ALJ could properly discredit plaintiff's subjective complaints

22  due to plaintiff's conflicting statements and testimony regarding his drug and

23  alcohol use.  See Light v. Social Security Administration, 119 F.3d 789, 792 (9th

24  Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider

25  "inconsistencies either in [plaintiff's] testimony or between his testimony and his

26  conduct"); see also Fair, 885 F.2d at 604 n.5 (9th Cir.1989) (ALJ can reject pain

27

28        [8]Plaintiff also testified that he did not attend meetings of Alcoholics Anonymous or Narcotics Anonymous.  (AR 333).

1   testimony based on contradictions in plaintiff's testimony).  At the Post-Remand
2   Hearing, plaintiff testified that he had had a significant problem with
3   methamphetamine in 2002 and 2003, but after being placed on medication, he had
4   stopped using the drug.  (AR 573-74).  However, upon further questioning by the
5   medical expert, plaintiff testified that he had actually stopped using
6   methamphetamine and marijuana by the end of 2004. (AR 574).  When confronted
7   with a blood test that showed that he had used drugs in 2005, plaintiff admitted
8   that he had been using drugs and alcohol through the date of the hearing.  (AR
9   575).  Plaintiff testified that he used methamphetamine "three or four times a
10  week," and drank alcohol three times a week "until [he was] drunk."  (AR 575).
11  In addition, plaintiff told Dr. Smith that he drank less than 24-ounces of malt
12  liquor about three times a week, that he smoked marijuana "a little bit," and did
13  not use any other drugs at that time, even though his testimony indicates
14  otherwise.  (AR 368).  The ALJ properly discounted plaintiff's subjective
15  complaints due to plaintiff's obvious lack of candor regarding his drug and alcohol
16  use.  See Thomas, 278 F.3d at 959 (holding that the ALJ did not err in using the
17  claimant's conflicting statements about her alcohol and drug use to discredit her
18  testimony) (citing Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999)).

19       Finally, the ALJ discounted plaintiff's subjective complaints, in part due to
20  plaintiff's failure to perform substantial gainful activity in the 15 years preceding
21  the ALJ's April 27, 2006 decision.  (AR 15).  An ALJ may discredit a claimant's
22  testimony in light of a poor work history.  Thomas, 278 F.3d at 959 (claimant's
23  "extremely poor work history" and demonstrated lack of "propensity to work in
24  her lifetime" constituted clear and convincing reasons for discounting claimant's
25  credibility); see SSR 96-7P (when assessing credibility ALJ may consider, *inter*
26  *alia*, "[claimant's] prior work record and efforts to work.").  Here, however, the
27  this reason for discounting plaintiff's testimony is not clear and convincing, since
28  plaintiff was 27 years old at the time of Pre-Remand Decision, and thus could not

1    likely have had a prior legal work history that spanned 15 years.  (AR 14, 15).

2    Nonetheless, even if this basis for the ALJ's credibility determination was

3    deficient, any such error was harmless because the ALJ's remaining reasons for

4    discrediting plaintiff's subjective symptom testimony are supported by substantial

5    evidence and the foregoing error does not negate the validity of the ALJ's ultimate

6    credibility conclusion in this case.  See Carmickle, 533 F.3d at 1162 (Where some

7    reasons supporting an ALJ's credibility analysis are found invalid, the error is

8    harmless if (1) the remaining reasons provide substantial evidence to support the

9    ALJ's credibility conclusions, and (2) "the error does not negate the validity of the

10   ALJ's ultimate credibility conclusion.") (quoting Batson, 359 F.3d at 1195)

11   (citation and internal quotation marks omitted).

12          Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

13   **V.    CONCLUSION**

14          For the foregoing reasons, the decision of the Commissioner of Social

15   Security is affirmed.

16          LET JUDGMENT BE ENTERED ACCORDINGLY.

17   DATED:  January 25, 2010

18                                            _____
                                                         /s/
19                                            Honorable Jacqueline Chooljian
                                              UNITED STATES MAGISTRATE JUDGE
20

21

22

23

24

25

26

27

28